# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. NOAH KEITH TIPTON

### Appeal from the Circuit Court for Monroe County
### No. 14165     Andrew Frieberg, Judge

---

### No. E2014-02531-CCA-R3-CD – Filed December 15, 2015

---

A Monroe County Grand Jury indicted the Defendant, Noah Keith Tipton, for one count of initiation of a process intended to result in the manufacture of methamphetamine ("the methamphetamine charge") and fourteen counts of aggravated cruelty to animals. Pursuant to a negotiated plea, the Defendant pleaded guilty to the methamphetamine charge and two counts of aggravated cruelty to animals and was sentenced to eight years with the manner of service to be determined at a sentencing hearing.[1] Following the sentencing hearing, the trial court found that the Defendant was "not eligible for punishment in the community" under Tennessee Code Annotated section 40-36-106(a)(1) but took under advisement the Defendant's claim that his "special needs" were treatable and could best be served in the community as provided by subsection -106(c). Following a second hearing in which no additional proof was taken, the trial court found that the Defendant's special needs could be best served in the Department of Correction rather than in the community corrections program for Monroe County. In this appeal, the Defendant argues that the trial court erred in denying his placement in the community corrections program. Upon our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROGER A. PAGE, J., joined. CAMILLE R. MCMULLEN, J., filed a separate dissenting opinion.

C. Richard Hughes, District Public Defender, and Stephen M. Hatchett, Assistant District Public Defender, Madisonville, Tennessee, for the appellant, Noah Keith Tipton.

---

[1] The purpose of the sentencing hearing was to determine if the Defendant was eligible to serve his sentence in the community corrections program.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Paul Rush, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2014, the Defendant pleaded guilty to the methamphetamine charge and two counts of aggravated cruelty to animals and was sentenced to eight years. During the plea colloquy, the State provided the following factual basis in support of the guilty plea:

On April 30th, 2014, Chris Williams of the Monroe County Sheriff's Department went to 165 Tipton Lane in Vonore for a complaint of animal cruelty. When he got there, he discovered several dogs on the property in various states of illness or neglect. He was unable to make contact with the property owner, and Bobby Wright was notified. Officer Wright and Captain Acuff returned on May 1st. The owner[,] Noah Tipton[,] was present. They found the animals to be ill, neglected, and one canine that was dead. The next day a search warrant was executed at the residence and a female [Redtick Coonhound] was found to be thin with sores on the inside of her legs and without food or water. That was also the day . . . that they noticed . . . a sharp chemical odor coming from the residence while they were serving legal process. In plain view was a lithium battery, had been cut open. Defendant was advised of his rights[.] "[The Defendant] stated that if we would have been 10 minutes later, it would have been a full-blown meth lab." Further search revealed, produced several items used in the manufacture of methamphetamine, as well as one active lab.

On November 17, 2014, the trial court conducted a sentencing hearing. The Southeast Tennessee Community Corrections Investigation Report ("presentence report") and a letter from Miracle Lake, a residential treatment facility in McMinn County, were entered into evidence. The Miracle Lake letter stated that there was a bed available for the Defendant to begin his two-month treatment program beginning October 2, 2014. The presentence report included the following explanation of the methamphetamine and aggravated animal cruelty charges provided by the Defendant:

I had got divorced from my wife and she had got back on dope and I went out and got some trying to keep her and lost her anyway and got hooked on it anyway and I asked someone to teach me how to shake a bottle and they did so I started it to keep my addiction up.

I had turned my dogs loose on a bear and they got eat up and one died and a couple hurt bad and that[']s how I got my charge.

In addition to the Defendant's charges in this case, the presentence report lists twenty-nine criminal charges arising out of eighteen separate incidents since 1994. In May 1998, the Defendant was charged with felony reckless endangerment involving a firearm. The Defendant was charged and convicted of criminal trespass in 1999, while the felony reckless endangerment charge was pending. On March 2, 2000, the Defendant pleaded guilty to felony reckless endangerment and was sentenced to two years' probation. On March 27, 2000, less than a month after he pleaded guilty to felony reckless endangerment, the Defendant was charged with assault. In August 2001, he was charged with violation of an order of protection, a second offense DUI, and driving on a revoked license. He was again charged with reckless endangerment on August 15, 2003, and the presentence report shows he was "convicted" of that charge on April 26, 2004. In February 2006, he was charged with three counts of "possession by a convicted felon." The presentence report does not identify what the Defendant possessed or state whether or not he was convicted. In February 2014, he was charged with domestic assault.

At his sentencing hearing, the Defendant explained the incident that led to his 1998 felony reckless endangerment conviction in the following exchange:

Q. (By General Rush) Just to make it clear, you're not saying the reckless endangerment with a deadly weapon was dismissed, right?

A. No, sir, no, sir.

Q. Okay. And that involved what?

A. It involved about two—about a half-gallon of moonshine, a[n] eight ball of dope, and a gun, and another guy with a gun, and an argument over a woman.

…

Q. [H]ow did you endanger anybody and what did you do it with?

A. Well, a .22 went off and it hit the van door, a bullet hit the van door parked at, at the guy's house.

Q. Okay. How did it go off?

A. I guess with my finger.

The Defendant then stated he "was shooting up in the air" and did not mean to hit the van door.

At his sentencing hearing, the Defendant explained the 2014 domestic assault charge, which he incurred approximately two months before he was arrested on the methamphetamine and animal cruelty charges, as follows:

> Yes, sir. I, I, I did have that charge come in on me. My wife hit me, and I mean, she, she hit me with a liquor bottle and broke my tooth and, you know, we had us an argument, and I laid her out at my cousin's house and I went, went on my way, and her mama come and got her and, you know, and yes, sir, I did come to jail. It was all dismissed.[2]

The following dialogue is from the testimony of Randall Scott Gray at the sentencing hearing. Mr. Gray was the Defendant's preacher:

> Q. [By defense counsel] Is it your concern, when you said they can't come on your property, is it your concern that if he's around those folks, that he's not gonna make it?
>
> A. He's not gonna make it. I mean, as long as he was with me and we were going to church and doing different stuff together—we was going hunting together and stuff—he was all right. All right, when I seen the trouble coming is when he married the second wife, and they started losing weight, and I started questioning him, and I went to his house, and he prom—he made me promise him—I'm gonna go ahead and say this in the courtroom. He made me promise him that if, if he ever got back on drugs or anything that I would come and whoop him.

Mr. Gray was asked a series of questions by the State concerning the Defendant's demeanor. Mr. Gray said that the Defendant was sometimes violent and that he "was a totally different person" when "high or drunk." When asked whether the Defendant was loud and violent when high or drunk, Mr. Gray answered that the Defendant was "10 foot tall and bulletproof."

After the parties argued their respective positions, the trial court engaged in a lengthy oral analysis and determined—based on the Defendant's conviction of a felony offense in which he used a weapon, his past pattern of behavior indicating violence, and a pattern of committing violent offenses—that the Defendant was not statutorily eligible for punishment in the community under Tennessee Code Annotated section 40-36-

---

[2] Gary Conner, Program Manager for Southeast Tennessee Community Corrections, testified that the criminal background check did not show a resolution for the domestic assault.

106(a)(1)(D), (E), and (F). Noting that its assessment of violence was not going to change, the trial court then took the matter under advisement for a later hearing to consider whether the Defendant's "issues could best be served in the community[.]"[3] On December 17, 2014, the trial court denied the Defendant's request to serve his sentence in the community corrections program finding that the Defendant's special needs could be best served in the Department of Correction rather than in the community corrections program in Monroe County.

This appeal then followed.

## ANALYSIS

The Defendant contends the trial court relied upon an erroneous interpretation of Tennessee Code Annotated section 40-36-106 to find him statutorily ineligible for placement in the community corrections program. We disagree. The trial court correctly found the Defendant was statutorily ineligible under Tennessee Code Annotated section 40-36-106(a)(1)(E) for punishment in the community. Next, the Defendant argues that the trial court erred in finding that his special needs would best be served by confinement. Again, we disagree. The trial court did not abuse its discretion in determining the special needs of the Defendant, who had a chronic history of drug and alcohol abuse and who pleaded guilty to initiating the process to manufacture methamphetamine, could be best served in the Department of Correction.

Because the trial court sentenced the Defendant within-range and considered the purposes and principals of the sentencing act, we review challenges to the denial of a community corrections sentence under the abuse of discretion standard, accompanied by a presumption of reasonableness. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012); see also State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012).

*Criteria for Eligibility under Tenn. Code Ann. § 40-36-106(a)(1)*

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1) (2010). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

---

[3] At the later hearing, the trial court also mentioned section 40-36-106(a)(1)(C) as a basis for finding the Defendant ineligible.

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved*;*

(E) Persons who do not demonstrate *a present or past pattern of behavior indicating violence; and*

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Id. § 40-36-106(a)(1)(A)-(F) (2010) (emphasis added). Subsections (A),(B),(C), and (D) provide eligibility criteria applicable only to the offense or offenses for which an offender is seeking punishment in the community. In contrast, subsections (E) and (F) establish eligibility criteria in which past behavior or conduct, in addition to the nature of the offense or offenses for which an offender is seeking punishment in the community, may be considered.

Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d) (2010).

Because the trial court analyzed each of the six criteria for eligibility set out in Tennessee Code Annotated section 40-36-106(a)(1) during the initial sentencing hearing, we will address each of its findings.

*Section 40-36-106(a)(1)(A).* The court acknowledged that the Defendant would be incarcerated in a correctional institution for his convictions unless he was eligible for community corrections.[4]

---

[4] The Defendant had been found to be unfit for probation due to his history of chronic alcohol and drug abuse. See State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

*Section 40-36-106(a)(1)(B).* The trial court correctly characterized aggravated cruelty to animals as a property-related offense and the methamphetamine charge as a drug-related offense for the purposes of finding the Defendant eligible under subsection (B).

*Section 40-36-106(a)(1)(C).* After correctly characterizing aggravated cruelty to animals as a property-related offense, the trial court, citing Tennessee Code Annotated sections 39-14-212(a) and (b), stated:

> You know, it is a property offense, but when you look at those elements—and again, I do find [the Defendant] to be a credible witness—but it talks about intentional, with cruelty, with a depravity, with a sadistic manner. It talks about torturing and maiming animals. That seems like a violent felony offense.

The trial court correctly noted that subsection (B) specifically includes a reference to "crimes against the person as provided in title 39, chapter 13, part 1-5," whereas subsection (C) does not reference crimes against the person. In reconciling this difference, the trial court stated that the violence involved with aggravated cruelty to animals could make the Defendant ineligible for community corrections under subsection (C).

For the purposes of eligibility for placement in the community, "nonviolent felony offense" is defined in section 40-36-102 as:

> (11) "Nonviolent felony offender"/"nonviolent felony offense" means a person committing a felony offense, or a felony offense, that does not involve serious bodily injury, as that term is defined in § 39-11-106, or death to a victim or bystander, does not involve threats reasonably calculated to produce such results and does not involve sexual contact or sexual penetration as those terms are defined in § 39-13-501[.]

Tenn. Code Ann. § 40-36-102(11). The definition of serious bodily injury in section 39-11-106 applies to all of title 39, including, if relevant, to the aggravated cruelty to animal statute.

In the hearing concerning the Defendant's special needs, the trial court referenced subsection (C) as one criteria on which it determined that the Defendant was not an eligible offender. It is not necessary for us to determine whether aggravated cruelty to animals is or is not a nonviolent felony offense as defined in Tennessee Code Annotated section 40-36-102(11), because, as will be discussed below, even if aggravated cruelty to animals is a nonviolent offense, any error in finding the Defendant ineligible for

community corrections under subsection (C) is harmless because an offender must meet *all* of the criteria set forth in section 40-36-106(a)(1) to be eligible for punishment in the community.

*Section 40-36-106(a)(1)(D).* As the trial court correctly recognized, the Defendant's prior conviction of felony reckless endangerment involving the discharge of a firearm does not make the Defendant ineligible for punishment in the community under subsection (D) because subsection (D) applies only to the offense for which the Defendant is seeking to be placed on community corrections and not to a prior offense.[5]

*Section 40-36-106(a)(1)(E).* Although the prior conviction for felony reckless endangerment cannot be a basis to find the Defendant ineligible under subsection (D), the trial court properly used the prior conviction as a factor for determining eligibility under subsection (E). This court has previously held that reckless endangerment involving the use of a firearm qualifies as a violent offense. See e.g., State v. Andrea Nichole Bean, No. M2011-02767-CCA-R3-CD, 2012 WL 6698060, at *5 (Tenn. Crim. App. Dec. 26, 2012). Based on the presentence report, in addition to the felony reckless endangerment involving a firearm, the Defendant had been charged with assault, violation of an order of protection, another reckless endangerment, and assault by domestic violence. Concerning the assault by domestic violence, a charge the Defendant incurred only two months before the Defendant was charged with initiation of the process to manufacture methamphetamine and aggravated cruelty to animals, the Defendant admitted getting into an altercation with his wife in which he "laid her out." Although the presentence report fails to provide sufficient information to determine whether the Defendant was convicted of several of the charges he incurred, the presentence report together with the Defendant's testimony and the testimony of Mr. Gray is more than sufficient to show that the Defendant has "demonstrate[d] a present or past pattern of behavior *indicating* violence." See Tenn. Code Ann. § 40-36-106(a)(1)(E) (emphasis added). The trial court properly found that the Defendant was ineligible for punishment in the community under subsection 106(a)(1)(E).

*Section 40-36-106(a)(1)(F).* Whereas subsection (E) involves a "pattern of behavior indicating violence," subsection (F) involves a "pattern of committing violent offenses." Obviously, these two subsections are intended to apply to different factual

---

[5] Later in the sentencing hearing, the trial court referenced Tennessee Code Annotated sections 40-36-106(a)(1)(D),(E), and (F) in finding that the Defendant was not eligible for punishment in the community. Based on the trial court's prior recognition that subsection (D) applied only to the offenses for which the Defendant was seeking to be placed on probation, it appears that the reference to subsection -106(a)(1)(D) was simply a mistake. If the trial court intended to find the Defendant ineligible under subsection -106 (D), the trial court erred. However, as will be discussed in the paragraph below, any error was harmless because an offender must meet all of the criteria under section 40-36-106(a)(1) to be eligible for punishment in the community.

situations.  Based on the wording of the two subsections, subsection (F) appears to be more stringent than subsection (E).  Although we have found no cases holding that subsection (F) applies only to convictions,[6] that appears to be a logical interpretation.  Although the presentence report shows that the Defendant had been charged with offenses indicating violence on several occasions, the presentence report shows only one conviction for a violent offense.  One conviction is not a pattern.  Andrea Nichole Bean, 2012 WL 6698060, at *5.

We conclude that the proof is insufficient to support the trial court's finding that the Defendant demonstrated a pattern of committing violent offenses under subsection (F).  However, once again, any error in finding the Defendant ineligible for community corrections under subsection (F) is harmless because an offender must meet *all* of the criteria set forth in section 40-36-106(a)(1) to be eligible for punishment in the community, and the Defendant was not eligible under section 40-36-106(a)(1)(E).

*"Special needs" Under Section 40-36-106(c)*

Once the trial court determined the Defendant was not eligible for punishment in the community under Tennessee Code Annotated section 40-36-106(a)(1), it was required to address the Defendant's request to be placed in the community corrections program under the "special needs" provision of section 40-36-106(c), which provides:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c) (2010).

The trial court properly addressed the criteria set out in subsection (c).  First, as discussed above, the trial court determined the Defendant was not eligible for punishment in the community under subsection (a).  Second, the trial court determined that the Defendant was eligible for probation based on the offenses for which he was convicted and his eight-year sentence.  See Tenn. Code Ann. § 40-35-303(a).  Third, the trial court found that the Defendant was unfit for probation because of his chronic history of alcohol and drug abuse.  Fourth, the trial court determined that the defendant's "special needs" were treatable.  Therefore, the issue which the trial court had to decide was whether the

---

[6] It is notable that subsection (B), (C), and (D) uses the term "convicted" to explain which offenders are eligible for punishment in the community, whereas subsection (F) uses the phase "do not demonstrate a pattern of committing offenses" for the same purpose.

Defendant's special needs could be *best* served in the community corrections program or in the Department of Correction.

As this court has previously stated:

Moreover, when imposing community corrections sentences, courts must remain mindful of the limited positions for placement within local programs and correspondingly limited resources for the treatment of the offender's special needs. Accordingly, the appellant's rehabilitative potential is central in the selection process. Each case must be guided by its individual facts and circumstances. Additionally, given their ability to review the offender's demeanor and characteristics first hand, trial courts are in the best position to ascertain an offender's amenability to a community corrections program.

State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997). Trial courts are also in the best position to determine if an ineligible offender's special needs "could be served best in the community rather than in a correctional institution." Tenn. Code Ann. § 40-36-106(a)(2). Resources vary from community to community and the local trial judge is in the best position to know what resources are available in the community.

In this case, when analyzing where the special needs of the Defendant could be best served, the trial court specifically mentioned its concerns arising from the testimony of the Defendant's minister about the Defendant's violent demeanor when he was drunk or high and the tendency of the Defendant to drink or do drugs when he was around the wrong people. Additionally, the trial court expressed concern that the Defendant would relapse into abusing alcohol or drugs if his sentence was served in the community corrections program for Monroe County. The trial judge was in the best position to gauge the critical factor of where the Defendant's special needs could be best served.

Trial courts have broad discretion in sentencing, and this court will not disturb a trial court's decision absent a clear abuse of that discretion. Caudle, 388 S.W.3d at 278-79; see also Bise, 380 S.W.3d at 707. Although the trial court did not make findings concerning what resources were available in the community corrections program, the finding were sufficient to show that the trial court weighed the options and determined that the Defendant's special needs could be best served in a correctional institution.

## CONCLUSION

It is clear from the record that the trial court agonized over its decision. Although the findings of the trial court could have been better articulated, or even better yet incorporated in its written order denying community corrections, the record is sufficient

to show that the Defendant was not eligible for punishment in the community pursuant to Tennessee Code Annotated section 40-36-106(a)(1)(E) and that the trial court did not err in finding pursuant to Tennessee Code Annotated section 40-36-106(c) that the Defendant's special needs could be best served in the Department of Correction. We, therefore, affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE